IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| DEON LASHETE LEE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   CV 323-052 |
| | ) |
| MARTIN O'MALLEY, Commissioner of | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Plaintiff appeals the decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.      BACKGROUND

Plaintiff protectively applied for DIB on March 4, 2021, and he alleged a disability onset date of May 30, 2018. Tr. ("R."), pp. 61, 79, 293. Plaintiff's last insured date for purposes of the DIB application is December 31, 2020. R. 293. Plaintiff was forty-one years old on his alleged

---

[1]The Court **DIRECTS** the **CLERK** to update the docket to reflect Martin O'Malley, Commissioner of Social Security Administration, as Defendant.

onset date, and was forty-six years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 25, 293. Plaintiff alleged disability based on: post-traumatic stress disorder, degenerative disc disease, chronic pain syndrome, chronic headaches, degenerative arthritis, anxiety-panic disorder, depression, sleep apnea, hypertension, and tennis elbow. R. 61, 297. Plaintiff reported obtaining a college degree in criminal justice, (R. 40, 298), and prior to his alleged disability date, had accrued a history of past work that included corrections officer, housekeeping aid, and police officer, (R. 51, 299).

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 79, 102. Plaintiff requested a hearing before an ALJ, (R. 175-77), and the ALJ held a hearing by telephone on November 22, 2022, (R. 37). Represented by counsel,[2] Plaintiff appeared and testified, as did a vocational expert ("VE"). R. 37-59. On December 23, 2022, the ALJ issued a decision finding Plaintiff not disabled.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since his alleged onset date of May 30, 2018 through his date last insured of December 31, 2020 (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant had the following severe impairments through the date last insured: degenerative dis[c] disease (lumbar and cervical spine), osteoarthritis (multi-joint), obesity, carpal tunnel syndrome (bilateral), degenerative joint disease (bilateral feet), plantar fasciitis (bilateral feet), asthma, obstructive sleep apnea, hypertension, chronic headaches, anxiety disorder, depressive disorder and post-traumatic stress disorder (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

---

[2]Plaintiff is represented by a different attorney in these federal court proceedings.

4. Through the date last insured, the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[3] except; he can no more than frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. The claimant can perform no more than occasional overhead reaching with his bilateral upper extremities; and no more than frequent fingering, feeling, and handling with his bilateral upper extremities. He can never climb ladders, ropes or scaffolds; and can never work around workplace hazards such as unprotected heights or moving mechanical parts. The claimant should have no concentrated exposure to temperature extremes or pulmonary irritants such as dust, odors, gases, or fumes. He can have no more than occasional interaction with coworkers, supervisors, and the public. The claimant can face no more than occasional changes in the workplace environment and routine. Finally, the clamant can never perform production pace work (work affecting or affected by the pace of others), such as assembly line work. Through the date last insured, the claimant was unable to perform any past relevant work (20 C.F.R. § 404.1565).

5. Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed, including representative, unskilled occupations such as officer helper, merchandise marker, and photocopy machine operator. (20 C.F.R. §§ 404.1569 and 404.1569a). Therefore, the claimant was not under a disability, as defined in the Social Security Act, since May 30, 2018, the alleged onset date, through December 31, 2020, the date last insured (20 C.F.R. § 404.1520(g)).

R. 12-25.

---

[3]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, (R. 1-5), the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand, arguing the jobs identified by the VE as occupations Plaintiff could perform were "prohibited by the limitations contained in the dispositive hypothetical and final RFC." Pl.'s Br., doc. no. 7, p. 5; see also Pl.'s Reply Br., doc. no. 9. The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be affirmed. See Comm'r's Br., doc. no. 8.

## II.  STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520,

4

1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.    DISCUSSION

Plaintiff argues the three unskilled jobs identified by the VE as available to him in the national economy - officer helper, merchandise marker, and photocopy machine operator – are actually prohibited by the RFC limitation of no more than occasional interaction with coworkers, supervisors, and the public. In particular, Plaintiff contends that because the VE testified some unskilled jobs have probationary periods during which an employee must have more than occasional interaction with supervisors and coworkers, Plaintiff cannot satisfy this work-related requirements for the identified jobs under the limitations set by the RFC. (Doc. no. 7, p. 7.) Thus goes the argument, because the ALJ determined Plaintiff could perform jobs precluded by the RFC

to find Plaintiff was not disabled, the administrative decision is not supported by substantial evidence. As explained below, the Court disagrees and concludes the ALJ validly relied upon the VE's testimony to find a significant number of jobs existed in the national economy that Plaintiff could perform.

### A.  VE's Testimony

Because of the importance of the VE's testimony, the Court recounts an extended portion of the exchange during the administrative hearing between the ALJ and the VE, as well as Plaintiff's attorney, as presented in the record, rather than relying on the limited quotations and paraphrasing used by both parties in the briefing. The introduction to the hypothetical recounted the characteristics listed in the ALJ's RFC for Plaintiff, including that the person "can have no more than occasional interaction with coworkers, supervisors, and the public," (R. 52), and after the VE confirmed the person was precluded from the past relevant work apparent in Plaintiff's record, the ALJ proceeded:

| | |
|---|---|
| ALJ: | Can you find any light, unskilled work in the national economy otherwise? |
| VE: | Yes, a hypothetical individual can perform the job of office helper, classified as light work, with a skill level of 2, 239.567-010, 6,700 United States. Individual can perform the job of merchandise marker, light work, skill level 2, 209.587-034, 137,000 United States. Photocopy machine operator, light work, skill level 2, 207.685-014, 6,100 United States. |
| ALJ: | Ms. Brinson, any variants in our answer from the DOT, or did you rely upon anything else? |
| VE: | For experience, training, and education for the testimony regarding overhead reaching because the DOT does not differentiate overhead reaching from reaching in all directions. Social interaction and production is also not addressed by the Dictionary of Occupational Title[s]. That testimony was based on experience, training, and education. |

|       |       |
|-------|-------|
| | . . . . (discussing hypothetical variations related to sitting and being off task two hours per day or absent one day per week) |
| ALJ: | Mr. Durham, any follow-up for Ms. Brinson while we have her? |
| ATTY: | Yes, sir. Thank you, Judge. |
| ALJ: | Sure. Sure. |

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:

| | |
|---|---|
| ATTY: | Now, Ms. Brinson, in answering the Judge's hypothetical questions, you only considered those limitations contained in the judge's hypothetical questions, correct? |
| VE: | That's right. |
| | . . . . (discussing record and current job numbers for identified occupations) |
| ATTY: | So, all the jobs that you've identified in response to the judge's hypothetical questions, those are all unskilled jobs, correct? |
| VE: | Yes. |
| ATTY: | All right and employers with unskilled workers have probationary periods of up to 120 [days] from your hire, is that correct? |
| VE: | Actually, just a - - I had a discussion with human resources out here at the State of North Carolina and their probationary period is a year, so it could go up - - in the spirit of full disclosure, I've heard of up to a year. It's usual, so 120 is more typical. |
| ATTY: | Okay and to become an employee, you must get through this probationary period, is that correct? |
| VE: | That's right. |
| ATTY: | And during the probationary period, an employee must have more than occasional interaction with supervisors and coworkers, is that correct? |
| VE: | Depends. Generally. There's some that don't require that much, but generally, yes. |

> ATTY: Okay. I think that's all the questions I have at this time.
>
> ALJ: Thanks, Counsel. And Ms. Brinson, thank you very much.

R. 52-57.

### B. The ALJ Properly Relied on the Testimony of the VE

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985). "In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question [to the VE] that accounts for all of the claimant's impairments." Barchard v. Comm'r of Soc. Sec., 628 F. App'x 685, 687 (11th Cir. 2015) (per curiam) (citation omitted); see also Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (same).

Here, the parties do not dispute the substance of the hypothetical presented to the VE which resulted in the identification of three occupations Plaintiff could perform in the national economy. Rather, they dispute whether Plaintiff can fulfill the requirements of the unskilled jobs identified by the VE because when asked by Plaintiff's attorney, the VE stated that employers with unskilled workers have probationary periods. R. 57. Furthermore, when the attorney asked whether a person must get through the probationary period, during which "an employee must have more than occasional interaction with supervisors and coworkers," the VE answered, "Depends. Generally. There's some that don't require that much, but generally, yes." Id. According to Plaintiff, this general response – not particularly directed to any of the three jobs specifically identified for Plaintiff – means the ALJ could not rely on the VE's testimony to conclude there were jobs in the national economy which Plaintiff could perform because the RFC limited him to no more than

8

occasional interaction with coworkers, supervisors, and the public. The Court disagrees and finds Plaintiff has not met his burden to show he cannot perform the work identified by the Commissioner. See Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1359 (11th Cir. 2018) (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (explaining once a claimant shows inability to perform past relevant work at step four of sequential process, burden shifts to Commissioner at step five to identify other jobs in national economy claimant can perform, and burden then switches back to claimant to prove inability to perform identified jobs)).

First, the VE never testified an officer helper, merchandise marker, or photocopy machine operator had probationary periods. Plaintiff's counsel did not ask.[4] Plaintiff overstates his case when he argues, "The fact that the vocational witness did not say that each particular occupation named by the ALJ required more than occasional interaction with supervisors and coworkers was irrelevant because the vocational testimony applied to ALL unskilled work." (Doc. no. 9, p. 3 (emphasis in original).) As the quoted testimony shows, the VE actually said it depends on the job because there are some that do not require more than occasional interaction. There was no testimony one way or the other about the applicability of *any* probationary period or *any* requirements (social interaction or otherwise) thereof for Plaintiff's identified jobs.

---

[4]The Court rejects Plaintiff's suggestion that his counsel was somehow cut off from conducting a fulsome cross-examination of the VE because "immediately after the vocational testimony that indicated occasional interactions with coworkers and supervisors would interfere with the performance of unskilled work, the ALJ dismissed the vocational witness and closed the hearing." (Doc. no. 9, p. 8 (citing R. 57-59).) To the contrary, as quoted herein, it was Plaintiff's counsel who immediately said, "Okay, I think that's all the questions I have at this time," as soon as the VE responded to counsel's question. R. 57.

For instance, counsel did not inquire about the specific training requirements for any of the three jobs such that a comparison could be made to Plaintiff's specific RFC characteristics that might impact his training. According to 20 C.F.R. § 404.1568, unskilled work "is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." Moreover, the three jobs identified for Plaintiff were listed as having a Specific Vocational Preparation (SVP) level of 2, which means training to learn the job would not exceed one month. See Social Security Administration's Program Operations Manual System ("POMS") DI § 25001.001(A)(77), available at https://secure.ssa.gov./apps10/poms.nsf/Home?readform, select POMS Table of Contents, select DI- Disability Insurance, follow link for DI 250: Medical-Vocations Evaluation (last visited Feb. 21, 2024). There was no attempt to explore the specifics of required training for any of the three jobs selected for Plaintiff, let alone whether a person with Plaintiff's RFC would be able to satisfactorily complete such training.

Second, the VE testified she relied on her review of the record, as well as her experience, training, and education with respect to social interaction requirements, to select the three jobs identified. R. 53. Thus, the VE is presumed to be aware of Plaintiff's college degree and that learning an unskilled job with an SVP of 2 takes no more than month and still determined Plaintiff could successfully perform such jobs with only occasional interaction with supervisors or co-workers. Not only does Plaintiff fail to point to any evidence showing the actual probationary requirements for any of the three jobs identified, but he relies on the outer limits of the definition of "occasional" to argue he can only interact with supervisors, coworkers, or the general public for one third of an eight-hour day. (Doc. no. 7, p. 6 n. 5 (citing SSR 83-10).) However, Social Security Ruling ("SSR") 83-10 actually defines "occasionally" as occurring from very little up to one-third of the time." SSR 83-10, 1983 WL 31251, at *5 (1983) ; see also

10

POMS, DI § 25001.001(A)(53) (defining an activity is occasional if it "occurs at least once up to one-third of an 8-hour workday).  Thus, in the absence of any specific information contradicting the VEs testimony that Plaintiff could perform the selected jobs, whether there was a probationary period or not, there is no basis to presume any necessary interaction would fall outside the acceptable range of very little or even spread out over a total time period of a little over two and one half hours per eight-hour workday.

Moreover, the record, as discussed by the ALJ, reveals that during the relevant time period, Plaintiff was able to interact with others sufficiently to go to the movies.  R. 15 (citing R. 824).[5]  Plaintiff also planned and took a trip to Las Vegas without any reported problems interacting with others while traveling.  R. 15-16 (citing R. 614, 821)[6]; see also R. 19 (citing R. 340 and explaining Plaintiff self-reported he "travels by driving and riding with others, and he is able to go out alone").  Plaintiff argues the ALJ ignored the cross examination of the VE and made "unexplained findings that contradicted the vocational testimony."  (Doc. no. 9, p. 8; doc. no. 7, p. 8.)  However, the record shows both that the VE did not testify on cross examination the three specified jobs had probationary periods Plaintiff would be unable to fulfill, and the ALJ's written discussion supports the findings there are jobs in the national economy not precluded by Plaintiff's limitations on social interaction.

At best, the VE said a probationary period of any length could have a requirement for more than occasional interaction with supervisors and coworkers:  "Depends.  Generally.

---

[5]Those same psychiatric treatment notes from September 10, 2019, reveal Plaintiff was stable on his medication and had no problem with panic in recent months.  R. 826.

[6]Those same psychiatric notes from June 18, 2029 explain "[Plaintiff's] anxiety was not as bad as he thought it would be," and that he has not had "any panic attacks for along time."  R. 821.

There's some that don't require that much, but generally, yes." R. 57. In light of that general testimony that was in no way connected to the three jobs identified for Plaintiff, as well as the ALJ's review of the entirety of the record, the Court concludes the Commissioner's decision is supported by substantial evidence.

Plaintiff's citation to out-of-circuit or otherwise non-binding precedent does not alter the Court's analysis.[7] (Doc. no. 7, pp. 7-8; doc. no. 9, p. 5.) Plaintiff's reliance on Sczepanski v. Saul, 946 F.3d 152 (2d Cir. 2020) and Mosher v. Saul, No. 5:18cv109/EMT, 2019 WL 3779995 (N.D. Fla. Aug. 12, 2019), has been aptly and succinctly distinguished in the Commissioner's brief as follows:

> . . . In Sczepanski, the ALJ found the claimant would miss one day of work per month, and the VE testified that "[d]uring the probationary period of 90 to 120 days there is typically no tolerance for absence." 946 F.3d at 155. In Mosher the VE testified that a claimant who had to miss one day of work per month would not be able to complete a probationary period for entry-level positions. 2019 WL 3779995, at *6. Here, the VE did not testify that the specific jobs she identified required any probationary period or more than occasional interaction with coworkers and supervisors during a probationary period (Tr. 57). See Reynolds v. Comm'r, Soc. Sec. Admin., No. 4:21-CV-01567-ACA, 2023 WL 401356, at *4 (N.D. Ala. Jan. 25, 2023) (distinguishing the facts of Sczepanski and Mosher where there was no testimony from a VE that the specific jobs relevant to the ALJ's determination of whether the claimant could work required a probationary period). Rather, the VE here testified that some jobs have a probationary period, and some of those jobs require more than occasional interaction with coworkers and supervisors during that probationary period (Tr. 57). The VE provided no testimony that the jobs she listed, and the ALJ cited, required a probationary period or more than occasional interaction with coworkers and supervisors during that period.

(Doc. no. 8, pp. 9-10.)

---

[7]Neither party cites to, and the Court's own research does not reveal, binding precedent on this issue.

Undeterred, Plaintiff's reply contends his argument that all work was excluded based on the VE's general testimony "was legally relevant even without any reliance on" Sczepanski or Mosher. (Doc. no. 9, p. 3.) Nonetheless, he argues the Commissioner's analysis fails because nothing in either case suggested the VE's testimony about probationary periods must be tied to the exact jobs the ALJ relied upon. (Id.) Importantly, however, he also fails to acknowledge the hypothetical presented to the VE in Sczepanski did not include the attendance limitation that would have precluded successful completion of a probationary period. 946 F.3d at 156. In addition, there was an identifiable "implication" in the context of the exchange between the ALJ and VE that the jobs identified in Mosher would be precluded by an inability to meet the attendance requirements of an applicable probationary period. 2019 WL 3779995, at *6.

Here, the hypothetical presented to the VE contained the social interaction limitation now in dispute, and there is no identifiable implication of anything that flows from the general response of it "[d]epends," and there are some jobs that "don't require that much [interaction with others]." R. 57; cf. Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013) (*per curiam*) ("The ALJ took account of Washington's moderate limitations in social functioning by asking the VE a hypothetical question that included the restriction that Washington was limited to jobs that involved only occasional interaction with the general public and coworkers.").

Plaintiff's citation in his reply brief to other non-binding precedent is similarly unavailing. (Doc. no. 9, p. 5.) In Kenneth P. v. Saul, No. 4:19-cv-0059-JMS-DML, 2019 WL 6463449, at *6 (S.D. Ind. Dec. 2, 2019), the court reached its conclusion to reverse the Commissioner's decision denying benefits after discussing the VE's testimony "that the

13

representative jobs had probationary periods that would likely require greater-than-superficial instruction," a limitation in the claimant's RFC.  Notably, there was VE testimony specific to the jobs identified as representative work for a claimant in the national economy that resulted in a dispute about training/instruction and an ability to complete a probationary period.  Here, there was no such specific testimony.  Plaintiff's attorney asked a general question about unskilled work, and he got a general answer:  it depends/some jobs require more than occasional interaction and some do not.

In sum, the Court finds the Commissioner's decision is supported by substantial evidence.  Plaintiff has not carried his burden to show he is unable to perform the jobs of office helper, merchandise marker, and photocopy machine operator that were identified as available to him in the national economy.  See Washington, 906 F.3d at 1359.  Accordingly, the Commissioner's decision should be affirmed.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 21st day of February, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA